Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Liberty Mutual Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiffs average weekly wage was $488.25, which yields a compensation rate of $325.52 per week, based upon the Form 22.
5. The issue for determination is whether the plaintiff sustained an injury by accident arising out of and in the course of his employment on March 26, 1999, and if so, to what benefits is he entitled under the Act.
6. The parties stipulated the following documentary evidence into the record:
a. I.C. Forms 18, 22, 33, 33R, and 61;
b. Plaintiffs Recorded Statement, ten pages;
c. Plaintiffs Responses to Interrogatories, twelve pages;
 d. Medical Records from Carolina Orthopedic Specialists, twenty pages;
 e. Catawba Memorial Hospital Emergency Room Records, eleven pages;
f. Employer Forms and Correspondence, thirteen pages.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On January 18, 1999, plaintiff began working for the defendant-employer as a molder operator. His duties included lifting logs into a machine that cut wood into shapes for furniture manufacturing. At the time plaintiff was hired, Penny Bollinger, the employers personnel manager, reviewed the employers policies and provided plaintiff with a rulebook. Ms. Bollinger specifically reviewed with plaintiff that employees were not to do personal work on the job without permission from the supervisor.
2. In early March of 1999, Paul Moody, lead man in the machine room, observed plaintiff collecting scrap pieces of wood. Mr. Moody advised plaintiff that employees were not to do personal projects at work unless authorized by a supervisor.
3. On March 25, 1999, plaintiff was trained to be a router operator. A router makes grooves on wood. A router is a higher-speed machine than a borer.
4. On March 26, 1999, just before lunchtime, the conveyor was broken down and the wood had backed up. Plaintiff had no work to process, so he picked up a piece of scrape wood that a coworker told him would make a nice birdhouse. The coworker asked plaintiff to drill a hole in the wood. Plaintiff had drilled a hole for another birdhouse about three weeks earlier.
5. Although plaintiff had not been trained in setup of the router, plaintiff changed the bit on the router to drill the one and one-half inch hole in the wood for the birdhouse. However, the borer bit should not have been used on the router because the bit is designed for a slower machine. As he began to drill, the bit came off the machine and struck plaintiff in his left arm.
6. Plaintiff was taken to Catawba Memorial Hospital Emergency Room by EMS personnel where he had surgery to repair fractures in the left arm.
7. On April 5, 1999, plaintiff gave a recorded statement to the adjuster on his case. Plaintiff denied at that time that he was doing personal work at the time of the injury. However, at the hearing before the Deputy Commissioner, plaintiff admitted this answer was false, but stated that he had not told the truth to the adjuster because he did not want to lose his job.
8. The employer terminated plaintiff on April 15, 1999 due to violation of employers policy on personal use of materials. He was still a probationary employee at that time.
9. Under the defendant-employers policy, if an employee wanted scrap wood, he had to request it from the machine room supervisor, who would then get permission from the plant manager. Employees were advised that they could be terminated if they did personal work on the job.
10. On May 20, 1999, plaintiff underwent a second procedure to remove the pins from his left arm.
11. Plaintiff was out of work until September 7, 1999 and retains a fifteen percent permanent partial disability to his left arm.
12. Plaintiffs injury to his left arm did not arise out of the employment but rather was a result of his decision to violate company policy to do personal work on the job.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSION OF LAW
The workplace injury suffered by plaintiff on March 26, 1999 did not arise out of his employment. At the time of his injury, plaintiff was engaged in personal work in violation of company policy. Therefore, he is not entitled to workers compensation benefits for his injury. N.C. Gen. Stat. 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim is, and under the law must be, DENIED.
2. Each side shall pay its costs.
This the ___ day of August 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER